STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-02-38,
and AP-02-51

2003 JUN 4 P 2: 25

LAKE REGION FURNITURE,

                    Plaintiff,          DONALD L. GARBRECHT
          v.                            LAW LIBRARY          DECISION AND ORDER

TOWN OF GORHAM[1],                      JUN 4 2003

                    Defendant,
          and

DAVID CAIRNS d/b/a PORTLAND COVER, LLC,

          Party-in-Interest

          This matter is before the court on the consolidated appeals of the plaintiff

(i) from the decision of the Town of Gorham Planning Board ("Planning Board")[2]

affirming the decision of the Minor Site Plan Review Committee ("Committee"),

which approved Portland Cover's minor site plan for a light manufacturing,

office, and retail space on its property at 669 Main Street, Gorham ("property"),

and (ii) from the decision of the Town's Board of Appeals ("Board of Appeals")[3]

affirming the decision of the Town's Code Enforcement Officer (CEO) that the

display of boats within the front yard setback area of the property does not

constitute "parking" within the meaning of the Committee's site plan approval

---

[1]The Town's Planning Board and Board of Appeals were originally named as defendants in these appeals. The defendants have moved without opposition to dismiss both Boards from this consolidated appeal because neither Board is a separate legal entity capable of being sued and the Town is the proper party-defendant. *Cf.* 30-A M.R.S.A. § 2002. The court agrees and the motion is GRANTED. *Levesque v. Inhabitants of the Town of Eliot,* 448 A.2d 876 (Me.1982).

[2] *See* Cumb. Cty. Super. Ct. Doc. No. AP-02-38.

[3] *See* Cumb. Cty. Super. Ct. Doc. No. AP-02-51.

and the Gorham Land Use & Development Code ("Code"). Code, Ch. II, § II(A)(10).

## BACKGROUND

The property is located in the Town's Roadside Commercial Zone ("RC Zone"). The plaintiff is the owner of abutting premises. R. at 5. In May 2002, Portland Cover applied to the Committee for approval of a minor site plan to convert a former service station on the property into a light-industrial, office and retail space for the manufacture and sale of canvas awnings, boat coverings, and marine equipment. At the time of Portland Cover's application, the property had not been used for several years. R. at 249. On May 29, 2002, the Committee approved the application. R. at 367. The approval included the conditions that "[t]here shall be no exterior storage or assembly of material or products outside of the building [and] no parking allowed in the front yard setback . . . ." *Id.*

The plaintiff appealed the decision to the Planning Board alleging that the Committee (i) failed to require the installation of a twenty-foot curbed and landscaped strip on the property within the fifty-foot setback area, and (ii) failed to conclude that the property cannot accommodate both the twenty-foot strip and the truck-turning radius requirements of the Code. *See* Code, Ch. II, § II(C)(1) & (2) and Ch. IV, § I(D)(1). On July 9, 2002, the Planning Board affirmed the decision of the Committee. R. at 367, 448.

The plaintiff also asked the Planning Board to consider the issue of whether any display and sale of boats in the front yard setback area of the property would constitute impermissible "parking". The Committee had discussed the matter without deciding the issue. The Planning Board

2

concluded that it was a matter for the CEO to decide, not the Committee, and that any appeal of that decision must be to the Board of Appeals. R. at 431.

During the pendency of the Planning Board appeal, the CEO determined that "parking in the front yard setback pertains to passenger vehicle parking and not the display of equipment or products for sale." R. at 445. The plaintiff appealed to the Board of Appeals, which upheld the CEO's interpretation on August 15, 2002. R. 490.

## DISCUSSION

A decision of a Planning Board or a Board of Appeals is reviewed for errors of law, abuse of discretion, or findings of fact not supported by substantial evidence in the record. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion." *Jones v. Town of Warren*, 1997 ME 200, ¶ 3, 704 A.2d 1210. The court must review only the record established before the Board in order to determine whether the standards have been met, and may not substitute its judgment for that of the Board. *Sahl v. Town of York*, 2000 ME 180, ¶ 11, 760 A.2d 266.

### A.    Planning Board Decision

In its deliberations, the Planning Board properly distinguished between nonconforming uses, and nonconforming structures or lots. R. at 429; *see Oliver v. City of Rockland*, 1998 ME 88, ¶¶ 9-10, 710 A.2d 905 (recognizing that a distinction between non-conforming uses, "which should not be perpetuated any longer than necessary", and non-conforming structures or lots is proper). The Planning Board correctly observed that, although Portland Cover's proposed use of the property is permitted in the RC Zone, the property is

nonconforming because the building encroaches into setback areas required by the Code — a nonconformity that predates enactment of the Code. R. at 449-50.

The Code expressly provides that lawful uses made nonconforming by the Code may be continued, subject to being lost through abandonment. Code, Ch. I, § II(1) & (2). This is consistent with "[t]he policy of zoning [] to abolish nonconforming uses as swiftly as justice will permit." *Oliver v. City of Rockland*, 1998 ME 88, ¶ 9, 710 A.2d 905 (quoting *Farley v. Town of Lyman*, 557 A.2d 197, 201 (Me. 1989)). However, the Code is silent regarding the continuation of existing nonconforming structures or lots. *See Oliver v. City of Rockland*, 1998 ME 88, ¶ 9, 710 A.2d 905 (the rule discouraging the perpetuation of nonconforming uses "does not preclude a town from adopting a policy permitting the continuance of nonconforming structures and enacting an ordinance which furthers that policy by its explicit terms). The Code merely provides that the Board of Appeals must approve the enlargement or physical replacement of nonconforming structures. Code, Ch. I, § II(4).

Although the Code does not expressly speak to the continuation of existing and unchanged structures made nonconforming by Code, the inference is clear – if administrative approval is only necessary to continue the nonconformance of a structure that is to be enlarged or replaced, it is not necessary to continue a nonconformance where there is no change. This is consistent with the Planning Board's determination that "[t]he Code does not require the removal of nonconforming structures or their abandonment." R. at 431. The interpretation of an ordinance is a question of law. *Wright v. Town of Kennebunkport*, 1998 ME 184, ¶ 5, 715 A.2d 162. "An agency's interpretation

of an [ordinance] it regularly administers is to be granted 'great deference' and must be upheld unless the [ordinance] 'plainly compels a contrary result.'" *Id.* (quoting *Berube v. Rust Eng'g.*, 668 A.2d 875, 877 (Me.1995).

The Planning Board found that Portland Cover's building was a nonconforming structure and that the absence of a twenty-foot curbed and landscaped strip on the property did not increase the nonconformity. R. at 431. It also found that the existing building would become useless and could not be reused if the property was required to have the twenty-foot buffer. *Id.* From this premise, the Planning Board determined that the property is grandfathered and the Code's requirement of a twenty-foot buffer does not apply. Code at Ch. II, §§ II(C)(1) & (2).

On this record, the court cannot conclude that the Planning Board's findings were not supported by substantial evidence, or that its decision to affirm the Committee's site plan approval constituted an error of law or an abuse of discretion. *Yates v. Town of Southwest Harbor*, 2001 ME 2, ¶ 10, 763 A.2d 1168. As a result, the plaintiff's related argument that the project violates the Code's vehicle circulation requirements because the property cannot satisfy both the twenty-foot buffer and the truck-turning radius requirements of the Code is moot. *See* Code, Ch. II, § II(C)(1) & (2) and Ch. IV, § I(D)(1).

B.    Board of Appeals Decision

The Code provides that "[n]o portion of any lot which is used to satisfy the front yard requirements of this ordinance shall be used for parking for any commercial or industrial use." Code, Ch. II, § II(A)10. The plaintiff argues that this language prohibits the display of boats for sale within the property's front

yard setback area because the boats would be "parked" there. The Board of Appeals upheld the CEO's contrary interpretation.

"A court must interpret an ordinance by first looking at the plain meaning of the language to give effect to legislative intent." *Banks v. Maine RSA # 1, Inc.*, 1998 ME 272, ¶ 4, 721 A.2d 655. Courts have often relied on dictionaries to determine such meanings. *Rockland Plaza Realty v. City of Rockland*, 2001 ME 81, ¶ 12, 772 A.2d 256. The verb "park" is defined as "[t]o put or leave (a vehicle) for a period of time in a certain location." WEBSTER'S II NEW COLLEGE DICTIONARY 799 (3rd ed. 2001).[4]

In addition, "terms or expressions are construed reasonably with regard to both the objects sought to be obtained and to the general structure of the ordinance as a whole." *Oliver v. City of Rockland*, 1998 ME 88, ¶ 8, 710 A.2d 905. The Code defines "parking space" as "an area . . . useable for the storage or parking of *passenger vehicles*." Code, Ch. I, § V at 27 (emphasis added). The CEO's interpretation of "park", as upheld by the Board of Appeals, is consistent with the general structure of the ordinance, and with a prior decision by that agency.[5] *See* R. at 445, ¶ 2.

---

[4] The "[t]erm 'park' as used in statutes or ordinances regulating parking, does not comprehend or include merely temporary or momentary stoppage but rather a stoppage with intent of permitting vehicle to remain standing for an appreciable length of time." BLACK'S LAW DICTIONARY 1005 (5th ed. 1979) (citation omitted).

[5] The plaintiff also argues that if the boats are not "parked," then they must be "stored." Pl.'s Br. at 17. Outside storage is also prohibited by the Code in light industrial parcels and by the Committee's conditions of approval. *Id.*; Code, Ch. I, § V at 24-25; R. at 386-87. This argument was not raised before the Board of Appeals, either in the Defendant's Letter of Appeal, R. at 451-57, or in the minutes of the meeting, R. at 488-507. Therefore, the plaintiff has waived the right to argue the issue on appeal. *Seider v. Bd. of Psychologists*, 2000 ME 206, ¶ 39, 762 A.2d 551 (holding that issues not raised at the administrative hearing are deemed unpreserved for appellate review); *New England Whitewater Center, Inc. v. Department of Inland Fisheries and*

However, resolution of that interpretive issue does not end the matter because the CEO's action and the Board's subsequent review may not have been an appropriate exercise of their respective authority. It does not appear that Portland Cover proposed or asked for approval to display boats for sale in the front yard setback area as part of its business operation, and there is no evidence that it actually placed boats in that area.[6] Thus, it is not clear on the record that there were any circumstances in this case for which the CEO, acting within the scope of his duties under the Code, was called upon to render an enforcement decision about such a display. *Cf.* Code, Ch. I, § III(A) ("It shall be the duty of the Code Enforcement Officer ... to enforce the provisions of this chapter"). Rather, it appears that the CEO simply expressed his advisory opinion that a display of boats for sale was not "parking" within the meaning of the Code. R. at 445. If that is so, then the Board of Appeals did not exercise

---

*Wildlife*, 550 A.2d 56, 58 (Me.1988) ("issues not raised at the administrative level are deemed unpreserved for appellate review"); M.R.Civ.P. 80B(f) (stating that review is limited to the record below).

[6] The Committee's Site Plan Review Report Prepared for May 29, 2002, notes that

> Mr. Cairns, the principal owner of Portland Cover LLC, has also indicated that he personally restores and retrofits boats and may occasionally offer them for sale at the site. These are personal sales, as opposed to company business, and the applicant has made it clear that is [sic] *not seeking approval for a retail boat sales operation in conjunction with this application.*

R. at 359 (emphasis added).

The record does reflect that in August 2001, Portland Cover submitted an initial application for site plan review, which is not the subject of this appeal. Because that plan sought to enlarge the nonconforming structure on the property, Portland Cover also applied to the Board of Appeals for permission to enlarge the nonconformity. Code, Ch. I, § II(4). In that latter application to the Board of Appeals, Portland Cover proposed to use a display area in the front yard setback. R. at 74, 90. Although the application was approved, the approval was later lost through inaction. Portland Cover did not renew its proposal for a display area in the subsequent site plan application that is now under consideration.

its power under the ordinance "[t]o hear and decide where it is alleged there is an error in any order, requirement, decision, or determination by the Code Enforcement Officer *in the enforcement of this Code*", and the matter was not ripe for appeal to the Board of Appeals. Code, Ch. I, § IV(B)(1) (emphasis added); but see *Rockland Plaza Realty v. City of Rockland*, 2001 ME 81, ¶ 6, 772 A.2d 256 (town ordinance specifically allows appeal to Board regarding interpretation of code).

On the other hand, if the CEO did make an enforcement decision and the Board's action constituted the proper exercise of its appellate power, then the breadth and import of its decision are unclear. When it came time for the Board to vote, the Town's counsel advised "that the issue before the Board is the question can Portland Cover park trailered boats in the setback". R. at 490.[7] However, the Board's actual vote was "to uphold the decision of the Codes Enforcement Officer." *Id.* The CEO only expressly "determined that parking in the front yard setback pertains to vehicle parking and not the display of equipment or products for sale." R. at 445. In effect, he merely interpreted the phrase "parking in the front yard setback" and held that it did not include "the display of products or equipment for sale." This determination does not decide the broader issue of whether the display and sale of boats in the setback area is allowed by the Code or the Committee's site plan conditions.

---

[7] This may have been an inadvertent mischaracterization of the question, since there was no dispute that "parking" was not allowed in the front setback area. The dispute centered on whether the display of boats for sale constituted "parking" within the meaning of the Code and the Committee's Conditions of Approval.

If it was the CEO's intent to decide the broader issue, it is not clear from the record that he had sufficient information with which to make such a determination. For example, both the Code and the Committee's conditions of approval prohibit the "storage or assembly of material or products outside of the building." Code, Ch. I, § V at 24-25; R. at 386-87. It has yet to be determined whether the "display of boats for sale" constitutes impermissible outside storage. Even if it is not "storage", it may be relevant to determine whether and to what extent such a display in the setback area would interfere with the property's capacity to accommodate the truck-turning radius requirements of the Code and the related condition imposed by the Committee. Code, Ch. IV, § I(D)(1); R. at 387. In this regard, there is insufficient record evidence about the proposed size and location of such a display. Accordingly, the decision of the Board of Appeals must be vacated and the matter remanded to the Board for further consideration and clarification of its decision and, if necessary, for remand to the CEO for further findings and determinations.

DECISION

Pursuant to M.R. Civ. P. 79(a), the Clerk is directed to enter this Decision and Order on the Civil Docket by a notation incorporating it by reference and the entry shall be:

> The decision of Town of Gorham Planning Board (Cumb. Cty.
> Super. Ct. Docket No. AP-02-38) is AFFIRMED; and

> The decision of the Town of Gorham Board of Appeals (Cumb. Cty.
> Super. Ct. Doc. No. AP-02-51) is VACATED and remanded to the
> Board of Appeals for further proceedings consistent with this
> Decision and Order.

Dated   April 24, 2003

_____
Justice, Superior Court

9

Date Filed _____ 7-23-02 _____    CUMBERLAND _____    Docket No. AP02-38 _____
                                    County                CONSOLIDATED WITH AP02-51
                                                          ALL FURTHER DOCKETING AND FILINGS TO
Action _____ 80B APPEAL _____                             BE IN AP02-38

LAKE REGION FURNITURE                                TOWN OF GORHAM
                                                     TOWN OF GORHAM PLANNING BOARD
                                                     PORTLAND COVER, LLC

                                          vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Paul Driscoll Esq.<br>Christopher Taintor Esq.<br>P.O. Box 4600<br>Portland ME 04112  774-7000 | NATALIE BURNS ESQ. (TOWN/PLANNING BOARD)<br>P.O. BOX 4510<br>PORTLAND, MAINE   04112<br>775-7271 |

Lisa Fitzgibbon Bendetson Esq.
P.O. Box 4630 (Town/Planning
Portland, Maine 04112  Board)
(207) 774-2500

NEAL WEINSTEIN, ESQ.
32 SACO AVENUE
P.O. BOX 660        (Portland Cover, LLC)
OLD ORCHARD BEACH, MAINE   04064-0660
207 934-2173

| Date of Entry | |
|---|---|
| 2002<br>July 23 | Received 7-23-02.<br>Complaint for Governmental Action with Exhibit A Filed.<br>On 7-23-02. |
| " " | Briefing schedule mailed.  Plaintiff's brief and record due 9-2-02. |
| July 25 | Received 7-25-02.<br>Summons filed showing officer's return of service on 7-22-02 upon Portland<br>Cover to Daniel Roberts Esq. |
| " " | Acceptance of service of Rule 80B complaint and service of process filed<br>showing service on Town of Gorham and Town of Gorham Planning<br>Board on 7-22-02 to Natalie L. Burns Esq. |
| Jul. 25 | Received 07-24-02:<br>Entry of Appearance of Natalie Burns, Esq. on behalf of Defendants, Town<br>of Gorham and Town of Gorham Planning Board filed. |
| Aug. 20 | Received 08-19-02:<br>Party-In-Interest, Portland Cover, LLC Answer to Complaint for  Govern-<br>mental Review M.R.Civ.P. 80B filed. |
| Aug. 20 | Received 08-12-02.<br>Entry of Appearance of Lisa Fitzgibbon Bendetson Esq., on behalf of<br>Town of Gorham and Town of Gorham Planning Board filed. |
| Aug. 30 | Received 08-30-02:<br>Plaintiff, Lake Region Furniture Motion for Enlargement of Time to File<br>Brief and Record filed. |
| Sep. 5 | Received 09-04-02:<br>Letter from Neal Weinstein, Esq. informing the Court that He has no objec-<br>tion to the Plaintiff's Motion for Enlargement of Time to File Brief and<br>Record filed. |

GO TO NEXT PAGE