STATE OF MAINE

KENNEBEC, ss

SUPERIOR COURT

CIVIL ACTION

DOCKET NO. AP-09-21

- KEN- 11/15/2011

DAVID A. BRADLEY,

Petitioner

v.

ORDER ON RULE 80C APPEAL

ANNE L. HEAD, in her official capacity
as Commissioner of the Department of Professional
and Financial Regulation, Office of
Licensing and Registration and THE BOARD
OF EXAMINERS OF PSYCHOLOGISTS,

Respondents

Before the Court is David A. Bradley's appeal pursuant to M.R. Civ. P. 80C from

a May 6, 2009 Decision of the Maine Board of Examiners of Psychologists finding Dr.

Bradley to have committed multiple professional and ethical violations and denying

renewal of his psychologist's license.

FACTS

David A. Bradley (Dr. Bradley) is a psychologist who was licensed and practiced

in the state of Maine. In 2007, two separate individuals lodged professional complaints

against Dr. Bradley with the Board of Examiners of Psychologists (the Board). These

were consolidated and became the subject of an adjudicatory hearing before the Board on

March 31 and April 3, 2009. The Board ultimately found that the conduct alleged in the

1

complaints constituted multiple ethical and professional violations and voted to deny renewal of Dr. Bradley's license in a Decision dated May 6, 2009.

The first complaint was filed by Ruth Buck on January 3, 2007. (SE 9.)[1] The complaint (the Buck Complaint) expressed multiple concerns surrounding Dr. Bradley's evaluation of Ms. Buck's eleven-year-old twin sons and certain deceptive billing practices, including charging the Bucks through his girlfriend's Freeport salon without authorization. The second complaint was filed by Dr. Gary Rasmussen on November 1, 2007. *Id.* at 110. The complaint (the Rasmussen Complaint) alleged fraud and incompetency in connection with Dr. Bradley's assessment and testimony about an adult male client in the course of court proceedings to terminate that client's parental rights. Among other things, Dr. Rasmussen reported that Dr. Bradley had fabricated entire conversations between himself (Dr. Bradley) and Dr. Rasmussen and another doctor, and reported these false consultations in his assessment of the client.

On August 5, 2008, the Board voted to "preliminarily deny license renewal" based on the allegations contained in the Buck and Rasmussen Complaints. (APR 67.) The Board informed Dr. Bradley of the decision by letter of August 29, 2008, and Dr. Bradley timely appealed the decision on September 24, 2008. On March 31 and April 3, 2009, the Board held an adjudicatory hearing. James Smith was designated as Hearing Officer, and Assistant Attorney General Judith Peters represented the State. *Id.* at 2.

---

[1] The administrative record was delivered in separate volumes. The volume containing the State's exhibits will hereinafter be referred to as "SE." The volumes containing the hearing transcript will be referred to as "Tr." The volume containing the agency procedure record will be referred to as "APR."

2

AAG Peters had also participated in and/or been present during the Board's August 2008 preliminary decision. *Id.* at 64.

With regards to the Buck Complaint, the Board made the following findings contained in its final Decision.

- Fee Arrangement: Without Ms. Buck's approval, Dr. Bradley charged her credit card for two separate payments of $500 and $570. (APR 4.) The charges were not billed to Casco Bay Mental Health Center where Dr. Bradley worked, but rather to "Salon Freeport LLC," a Freeport salon run by his girlfriend. *Id.* Dr. Bradley himself, along with the Board's expert Dr. Thomas Collins, testified to these facts. *Id.* at 6. The Board voted 5-0 that Dr. Bradley's conduct constituted negligence in the practice of psychology, and/or violations of Board Rules, and/or violations of standards contained in the Ethical Principles of Psychologists of the American Psychological Association (APA principles).

- Informed Consent: Dr. Bradley failed "to provide a concise and clear statement describing the services he intended to provide [the Bucks] on behalf of both of their minor sons and to obtain their informed consent for those services." (APR 6.) Dr. Bradley and Dr. Collins both testified to these facts. *Id.* The Board voted 5-0 that Dr. Bradley's conduct constituted negligence in the practice of psychology and/or violation of APA principles. *Id.* at 7.

- Use of Insufficient and/or Outdated Testing Instruments: Dr. Bradley used the "QEEG" test, the Slingerland test, and the O'Donnell test in assessing the Buck twins. The QEEG test was insufficient to serve as the basis for an AAD/ADHD diagnosis, and was negligently administered. The Slingerland test was also

3

insufficient because only one page was used, and the O'Donnell test was questionable because not recognized by the relevant medical community. (APR 7.) Dr. Bradley testified that he "relied upon insufficient testing instruments to conduct" the twins' assessment, and Dr. Collins testified similarly. *Id.* at 7-8. The Board voted 5-0 that Dr. Bradley's conduct constituted negligence in the practice of psychology and/or violation of APA principles. *Id.* at 8.

- Record Keeping: Dr. Bradley's records were "not organized and were cryptic and illegible. The test results were not recorded and neither was the administered version of the Slingerland test." (APR 8.) Additionally, billing through the Freeport salon could preclude the Bucks from getting insurance reimbursement and breached confidentiality. *Id.* Dr. Bradley testified to the facts above. *Id.* The Board voted 5-0 that Dr. Bradley's conduct constituted negligence in the practice of psychology and/or violation of APA principles. *Id.* at 8-9.

With regards to the Rasmussen Complaint, the Board made the following findings contained in its Decision: Dr. Bradley performed an evaluation and assessment of a father who was contesting a parental rights termination action and put his findings in an August 14, 2007 written report for the guardian ad litem in the case. Dr. Bradley then testified to the same findings at a court hearing on October 24, 2007 to determine the father's parental rights. (APR 9.) The Board found Dr. Bradley to have committed:

- Fraud and Deceit: Dr. Bradley misrepresented in his August 2007 assessment and in his October 2007 sworn testimony that he had had relevant, substantive conversations about the father's condition with Dr. Rasmussen and Dr. Kathryn Thomas when, in fact, he had not. (APR 10.) He also misrepresented a

4

conversation he had had with counselor Robert McLaughlin, indicating that Mr. McLaughlin believed the father had made positive progress when, in fact, he had actually indicated to Dr. Bradley that "little had changed" and the father had made little to no progress in being reunited with his children. *Id.* at 10-11. Dr. Bradley testified to these facts, but maintained that the misrepresentations were unintentional. *Id.* at 10. The Board voted 5-0 that Dr. Bradley had committed multiple instances of fraud and/or deceit in the practice of psychology, and/or multiple violations of Board Rules, and/or multiple violations of APA principles. *Id.* at 11.

– Incompetent Forensic Evaluation and Assessment: Dr. Bradley was aware that his written report on the father would be used for court proceedings, but he "failed to include material information that painted a negative picture of [the father's] personality." (APR 12.) He wrote in his report, "the results indicate that [the father] does not currently possess any hostile or aggressive urges toward anyone including his children or his former wife . . . The formal testing does not indicate any signs that he is at risk for abusive behaviors toward children or toward other individuals . . . There was no significant data to support the existence of any mental health issues or pathology." (APR 12; SE 118.) The report, however, ignores the results of the father's "Minnesota Multiphastic Personality Test," which indicated the possibility for violence and Antisocial Personality Disorder. (APR 12.) Additionally, neither the basis for administering the test nor the test results were meaningfully revealed. *Id.* Dr. Bradley himself testified that the father's test results did not exhibit emotional stability and that he (Dr. Bradley)

5

was not competent to testify in his case. *Id.* at 13. The Board voted 5-0 that Dr. Bradley's conduct constituted negligence in the practice of psychology, and/or multiple violations of the APA principles.

The Board, "utilizing its expertise in the practice of psychology, and based on the exhibits and testimony and the above findings of fact and conclusions of law," voted 5-0 to deny Dr. Bradley's appeal and to deny renewal of his license. *Id.* at 14. This appeal followed.

## DISCUSSION

The court must affirm agency decisions unless it finds an abuse of discretion, error of law, or findings unsupported by substantial evidence from the record.[2] *Thacker v. Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013 (citation and quotation omitted). Dr. Bradley maintains that the Board Decision was affected by bias, the sanctions imposed were arbitrary and capricious, and the current appeal is moot.

I.    *Dr. Bradley did not properly preserve the bias issue for appeal, and, alternatively, AAG Peters did not improperly mix her roles as prosecutor for the State and advisor to the Board.*

Dr. Bradley argues that "the actions of the Assistant Attorney General in her various roles as prosecutor and advisor to the Board created an intolerably high risk of

---

[2] Under the statutory iteration, the Superior Court may only reverse or modify an administrative decision if it is:
    (1) In violation of constitutional or statutory provisions;
    (2) In excess of the statutory authority of the agency;
    (3) Made upon unlawful procedure;
    (4) Affected by bias or error of law;
    (5) Unsupported by substantial evidence on the whole record; or
    (6) Arbitrary or capricious or characterized by abuse of discretion.
5 M.R.S.A. § 11007(4)(C).

unfairness which violated Dr. Bradley's due process rights." (Br. of Pet. 6.) He urges the Court to adopt the findings of Justice Jabar in a May 19, 2009 Amended Order granting stay in this case. Concluding that there was a strong likelihood of success on the merits of the bias issue, Justice Jabar reasoned that AAG Peters "mixed her prosecutorial function with her position as an attorney for the Board" leading up to the hearing. (Jabar Order 5.) Justice Jabar based his conclusion on an affidavit produced by AAG Peters that he characterized as "conflicting and confusing" in its depiction of her role.

The State defends Dr. Bradley's argument on two fronts. First, it maintains that Dr. Bradley did not properly preserve the bias argument for appeal. Second, it maintains that, even if the bias argument had been properly preserved, the Board Decision was not affected by bias because AAG Peters acted squarely in her role as prosecutor for the State after the Board's preliminary denial of Dr. Bradley's license in August 2008.

a. *Dr. Bradley did not properly preserve the bias issue for appeal.*

The State argues that Dr. Bradley never raised the bias issue prior to, or during, the adjudicatory hearing. Dr. Bradley has not seriously contested this point when the opportunity presented itself. The State's Opposition Brief clearly argued that Dr. Bradley failed to preserve the bias issue, yet he did not submit a Reply brief. After Dr. Bradley filed a Motion to take additional evidence to develop his bias theory, the State in its Opposition argued that he had failed to preserve the issue. Again, Dr. Bradley elected not to submit a Reply. Likewise, there was no substantial response at oral argument. Thus, perhaps tellingly, there has been no meaningful defense to the State's position that the bias issue was not preserved.

Maine law is clear that issues not raised at the administrative level are deemed unpreserved for appellate review. *New England Whitewater Ctr., Inc., v. Dep't of Inland Fisheries and Wildlife*, 550 A.2d 56, 58 (Me. 1988) (citations omitted). The rule applies even to "unpreserved issues implicating constitutional questions." *Id.* The purpose is to "ensure that the agency, and not the court, has the first opportunity to pass upon the claims of the parties." *Oliver v. City of Rockland*, 1998 ME 88, ¶ 7, 710 A.2d 905 (citation omitted).

Although previous orders within the docket are not binding here, Justice Marden's October 2009 Order denying the taking of additional evidence is instructive. After filing the current Petition, Dr. Bradley made a Motion, referenced above, to take additional evidence in support of his bias theory. Justice Marden denied the Motion, reasoning that Dr. Bradley had failed to raise the bias issue at any point up to or during the hearing. (Marden Order 2-5.)

Likewise, the Record lacks any evidence of Dr. Bradley objecting to AAG Peters' participation, despite ample opportunity to do so. For instance, on March 30, 2009, Jennifer Riggle, who was Dr. Bradley's counsel at the time, AAG Peters, and Hearing Officer James Smith held a telephone conference to discuss nine issues for hearing outlined in an email from Attorney Riggle. (APR 109.) None of the nine issues contained a bias objection in any form. At a conference on the record at the March 31 hearing, Attorney Riggle reiterated objections from the telephone conference, but again did not mention any concerns about bias. (Tr. 2-14.) When the Board indicated that all but one of its members at the hearing had participated with AAG Peters in the August 2008 decision to preliminarily deny Dr. Bradley's license, Attorney Riggle voiced no

8

objection and declined Hearing Officer Smith's offer to give the Board further instructions. *Id.* at 23-24. On April 2, 2009 (between the two hearing dates), Attorney Riggle wrote AAG Peters an email letter concerning settlement discussions, referring to the Board as "your client." In her reply, AAG Peters clarified her role, stating, "I made that statement in my role as the prosecutor for the citizens of the State of Maine. As I am sure you are aware, once a licensing complaint proceeds to hearing, the assistant attorney general no longer represents the Board with respect to that matter."[3] In any case, if AAG Peters' reply did not clarify potential confusion, Attorney Riggle again declined to raise an objection on April 3, including in her closing argument or final objections. (Tr. 275-279, 282-286.)

Thus, it is clear that the issue of bias was not preserved for appeal because it was not raised at any point during the administrative proceedings.[4] This comports with the principle of administrative exhaustion, as "Petitioner and his trial counsel failed to give the Board and Hearing Officer an opportunity to explore any potential Board member bias arising from Ms. Peters' involvement." (Br. of Resp. 13.)

b. *AAG Peters did not improperly mix her roles as prosecutor for the State and advisor to the Board.*

Although failure to preserve the bias issue is dispositive here, the Court briefly addresses the merits of Dr. Bradley's argument on this point. Relying on the May 2009 Jabar Order, Dr. Bradley seems to contend that AAG Peters simultaneously acted as

---

[3] This email correspondence was not included in the administrative record because it had been previously attached to AAG Peters' affidavit in connection with Dr. Bradley's request for injunction or stay.

[4] The Court would briefly add that Attorney Riggle is not necessarily at fault for not having raised this issue. The bias argument raised by Dr. Bradley's current counsel is largely unsubstantiated by the Record. (*See* subsection b, *infra*).

9

attorney for the Board and the State in the months leading up to the hearing of March and April 2009. (Br. of Pet. 6-8.)

Both sides offer case law indicating that the Attorney General's office may switch between different roles including investigator, prosecutor, and fact-finder/decision-maker. *See Gashgai v. Bd. of Registration in Med.*, 390 A.2d 1080, 1082 n. 1 (Me. 1978); *Zegel v. Bd. of Soc. Worker Licensure*, 2004 ME 31, ¶ 16 n. 3, 843 A.2d 18 ("A combination of investigative and adjudicatory functions in administrative proceedings generally does not violate due process absent some further showing of bias or the risk of bias.") (citation omitted). "An administrative process may be infirm if it creates an intolerable risk of bias or unfair advantage." *Zegel*, 2004 ME 31, ¶ 16, 843 A.2d 18 (citation omitted).

The factual basis for Dr. Bradley's position is unclear, but he seems to derive "intolerable risk of bias" from his belief that AAG Peters was acting as attorney for the Board and the State *at the same time*. (Br. of Pet. 7.) Ultimately, however, Dr. Bradley has not pointed to any evidence that AAG Peters acted as counsel or advisor to the Board *after* August 2008. [5] This may be due, in part, to the October 2009 Marden Order denying the taking of additional evidence due to failure to preserve the bias issue. In that motion and here, Dr. Bradley relies heavily on the May 2009 Jabar Order granting stay,

---

[5] The factual support for Dr. Bradley's position is ambiguous, and, for the most part, undocumented. Dr. Bradley states in his Brief that Attorney Riggle contacted AAG Peters to discuss a consent agreement some time after February 9, 2009. He states, "Peters apparently had advised Ms. Riggles that 'the Board' was her 'client'" and that it was insistent on upholding the denial. (Br. of Pet. 4-5.) To this end, Attorney Riggle later referred to the Board as being AAG Peters' "client" in the April 2, 2009 email letter. However, there is no documentation in the April 2 letter or elsewhere of any interaction that would have led Attorney Riggle to this conclusion. Furthermore, AAG Peters clarified in her reply email, also of April 2, that she was acting in her "role as the prosecutor for the citizens of the State of Maine."

in which Justice Jabar stated that AAG Peters had "mixed her prosecutorial function with her position as an attorney for the Board." (Jabar Order 5.) That Order, in turn, relied heavily on AAG Peters' affidavit explaining her role. Justice Jabar found it "conflicting and confusing" how Peters stated there that she was "assigned to represent the Board." (Peters Aff. ¶ 2.) Taken in context, however, AAG Peters' statement could be read to mean that she generally, or most often, represents the Board. The rest of the affidavit and the attached communications between AAG Peters and Attorney Riggle make it clear that AAG Peters considered herself prosecutor for the State after August 2008.

Overall, the Record indicates only that an AAG participated in an initial investigation and/or preliminary licensing decision, and eight months later prosecuted that case in front of the same administrative body. Because the Court has not been directed to any evidence of the AAG having any advisory role or contact with the Board during the interim, it cannot conclude bias exists.

II.     *The sanction imposed on Dr. Bradley was not arbitrary and capricious or in violation of due process.*

Dr. Bradley next argues that the Board's Decision not to renew his license was arbitrary and capricious and violative of due process because there are no written criteria to govern the imposition of sanctions, leaving the Board with unfettered discretion. (Br. of Pet. 8-10.) Dr. Bradley cites to four previous Board decisions to show, "the sanctions imposed upon Dr. Bradley are not in accord with the sanctions the Board has imposed upon others." *Id.* at 8.

Pursuant to 10 M.R.S.A. § 8003(5-A)(B), the Board has broad authority to impose discipline, including "[d]enial or refusal to renew a license." *Id.* § 8003(5-A)(B)(1). As

11

the State points out, Dr. Bradley was unable to cite to any authority "for the proposition that a licensing board must engage in separate rulemaking to establish criteria by which it will impose the clearly authorized statutory sanctions for various disciplinary violations." (Br. of Resp. 25.) To withstand scrutiny on appeal, an agency decision must simply contain factual findings sufficient to explain the basis for the sanctions imposed so that the court need not hypothesize about the agency's reasoning. *Zegel*, 2004 ME 31, ¶ 24, 843 A.2d 18.

Here, the Board was well within its statutory authority when it denied renewal of Dr. Bradley's license. Moreover, the Board Decision, fourteen pages in length, painstakingly outlined the factual basis of each charge against Dr. Bradley. Dr. Bradley does not argue otherwise. It is true that agency statutes and regulations must provide objective criteria for determining what type of *conduct* is proscribed under the relevant authority. *See State v. McCurdy*, 2010 ME 137, ¶ 17, 10 A.3d 686 ("Persons engaged in activities subject to state or local regulation are entitled to know with reasonable clarity what they must do to engage in the regulated activities without violation of the law.") (citations omitted). However, Dr. Bradley has pointed to no similar authority requiring the use of objective criteria in imposing the various available sanctions.

III.     *Dr. Bradley's appeal is not moot.*

Lastly, Dr. Bradley claims that the Board renewed his license in July 2010, thus rendering the Board's May 2009 Decision denying renewal moot. (Br. of Pet. 10.) A case becomes moot when it loses its "controversial vitality" due to supervening circumstances. *State v. Jordan*, 1998 ME 174, ¶ 10, 716 A.2d 1004 (citation omitted).

As the State points out, however, if the appeal was moot, it "would be dismissed and the [Board's] Decision and Order would stand as written." (Br. of Resp. 27.) Dismissal is obviously not Dr. Bradley's intention. Moreover, the mootness argument is based on unsubstantiated facts. Dr. Bradley offers no proof that the Board renewed his license in July 2010. The State recognizes that Dr. Bradley did file a renewal application on July 28, 2010, attaching a copy of it to its brief. (Br. of Resp. 28.) The State maintains that the application "has not been acted on by the Board while it awaits a decision from this court on the merits of this appeal." *Id.* Given that Dr. Bradley has not factually supported his argument, and assuming that any renewal decision would be influenced by this appeal, the Court cannot say that the issue is moot.

The entry will be:

The Court AFFIRMS the May 6, 2009 Decision of the Board of Examiners of Psychologists denying renewal of Dr. Bradley's psychologist's license.

_11/15/11_

DATE

SUPERIOR COURT JUSTICE

13

Date Filed __5/4/09__ _____ Docket No. __AP -09-21__

_____ County

JUSTICE ASSIGNED: ~~ROBERT MURRAY~~ *Recuse*

Action ___PETITION FOR REVIEW___

___80C___

# J. Murphy

DAVID BRADLEY     vs.     BOARD OF EXAMINERS OF PSYCHOLOGISTS

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ERIC MEHNERT<br>HAWKES & MEHNERT, LLP<br>SIX STATE STREET, SUITE 600<br>BANGOR, ME 04401 | ROBERT PERKINS, AAG<br>OFFICE OF THE ATTORNEY GENERAL<br>6 STATE HOUSE STATION<br>AUGUSTA, ME 04330 |

| Date of Entry | |
|---|---|
| 5/4/09 | Petition for Review and Complaint for Injunctive Relief, filed 5/4/09<br>s/ Eric Mehnert, Esq. |
| 5/4/09 | Motion for Temporary Restraining Order, Request for Hearing, Notice Pursuant to Rule 7(b)(1)(a), Affidavit of David Bradley, filed 5/4/09<br>s/Eric M. Mehnert, Esq. |
| 5/7/09 | Hearing scheduled for May 8, 2009 at 9:00 a.m. Parties notified by phone. |
| 5/8/09 | Hearing held with the Hon. Justice Joseph Jabar, presiding. Tape #1097<br>Index 212-2189<br>Eric Mehnert, Esq. for the Petitioner and Judith Peters, AAG for the Respondent.<br>Oral arguments made to the court. Court to Grant the TRO until 5/15/09. |
| 5/11/09 | Supplement to Memorandum in Opposition to Motion for Temporary Restraining Order, or in the Alternative, Motion to Stay, filed. s/Peters, AAG<br>Affidavit of Judith M. Peters, AAG in Opposition to Motion for Temporary Restraining Order Order or in the Alternative Motion to Stay, filed.<br>s/Peters, AAG |
| 5/13/09 | Corrected copies, filed. s/Peters, AAG |
| 5/15/09 | Opposition to Motion for Temporary Restraining Order, or in the Alternative Motion to Stay, filed. s/Peters, AAG<br>Affidavit of Kaidena L. Neumann Opposition to Motion for Temporary Restraining Order or in the Alternative Motion to Stay, filed. s/Neumann<br>Affidavit of Kelly L. McLaughlin, filed. s/McLaughlin |
| 5/15/09 | ORDER, Jabar, J.<br>For reasons stated above, the petitioner's request for injunctive relief and/or motion for stay are DENIED.<br>Copies mailed to attys. of record. |
| 5/19/09 | ORDER OF 5/15/09 VACATED. Jabar, J.<br><br>AMENDED ORDER, Jabar, J.<br>For reasons stated above, the court hereby GRANTS the petitioner's |

| Date of Entry | Docket No. _____ |
|---|---|
| ------- | request for a stay pending a final resolution of the pending appeal in this matter.<br>Copies mailed to attys. of record. |
| 5/26/09 | Respondents' Answer to Petitioner's Petition for Review and Complaint for Injunctive Relief, filed. s/Perkins, AAG |
| 6/5/09 | Agency Record, filed. s/Perkins, AAG  (in vault)<br>**NOTICE AND BRIEFING SCHEDULE ISSUED**<br>Copies mailed to attys. of record. |
| 6/12/09 | Motion to Take Additional Evidence with Integrated Memorandum of Law, filed. s/Mehnert, Esq.<br>Notice, filed. s/Mehnert, Esq.<br>Request for Hearing, filed. s/Mehnert, Esq.<br>Transcript Order, filed. s/Mehnert, Esq.<br>Copy of Transcript Order mailed to electronic recording. |
| 6/16/09 | Copy of letter from electronic recording, filed. s/Beckwith |
| 6/19/09 | Transcript of Agency Record, filed. s/Perkins, AAG |
| 6/29/09 | Copy of letter from Electronic Recording, filed. s/Beckwith |
| 6/30/09 | Request Leave of Court to File Extended Brief, filed. s/Perkins, AAG |
| 7/7/09 | Respondent's Memorandum in Opposition to Motion to Take Additional Evidence, filed. s/Perkins, AAG<br>Contingent Motion to Take Additional Evidence, filed. s/Perkins, AAG<br>Proposed Order, filed. |
| 7/10/09 | Petitioner's Agreed to Motion to Reset Briefing Deadlines in 80C Appeal with Integrated Memorandum of Law, filed. s/Mehnert, Esq.<br>Proposed Order, filed. |
| 7/14/09 | ORDER, Jabar, J.<br>Pursuant to Rule 7(f), Respondent is granted leave to file a response to the Petitioner's motion to take additional evidence not to exceed 12 pages.<br>Copies to attys. of record.<br><br>MOTION TO RESET BRIEFING DEADLINES, Jabar, J.<br>Motion granted. Briefing schedule to be set following action of pending motions.<br>Copies mailed to attys. of record.<br><br>**Notice of setting for 9/15/09**<br>**sent to attorneys of record.** |
| 9/15/09 | Hearing held with the Hon. Justice Donald Marden, presiding.<br>Eric Mehnert, Esq. for the Petitioner and Robert Perkins, AAG for the Respondent.<br>Oral arguments made to the court. Court to take matter under advisement. |
| 9/18/09 | Letter entering appearance, filed. s/Perkins, AAG |
| 7/16/10 | Letter, filed. s/Perkins, AAG |
| 7/21/10 | ORDER, Marden, J. (10/22/09)<br>The petitioner's motion to take additional evidence is DENIED.<br>Copies to attys. of record. |

| Date of Entry | DAVID BRADLEY VS BOARD OF EXAMINERS OF PSYCHOLOGISTS     Docket No. ___AP-09-21___ |
|---|---|
| 7/27/10 | Letter filed by Robert Perkins, AAG regarding decision dated 10/22/09. |
| 7/27/10 | Agreed upon motion to reset the briefing schedule with integrated memorandum of law filed by Atty Mehnert. |
| 8/2/10 | ORDER, Marden, J.  (7/27/10)<br>1. The Petitioner's Agreed to Motion to Reset the Briefing Schedule is granted.<br>2. The Petitioner's Motion to Take Additional Evidence pursuant to M.R.Civ.P. Rule 80C is DENIED.<br>3. The Petitioner shall have up to and including Sept. 1, 2010 to file Petitioner's Brief.<br>4. Respondents' Brief shall be due on Oct. 15, 2010.<br>5. Petitioner shall file any Reply Brief by Nov. 1, 2010<br>Copies to attys. of record. |
| 9/3/10 | 80C Appeal Brief, filed 9/1/10.  s/Mehnert, Esq. |
| 10/14/10 | Respondent's Memorandum in Opposition to Petition for Review, filed. s/Perkins, AAG. |
| 4/8/11 | Oral arguments scheduled for May 4, 2011 at 10:00. |
| 4/20/11 | Motion To Continue Oral Argument, filed.  s/Perkins, AAG |
| 4/26/11 | Respondents' Motion to Continue Oral Argument is GRANTED, Murphy, J. Copy to Atty Mehnert and AAG Perkins |
| 6/24/11 | Oral argument scheduled for 8/3/11 at 1:00. List mailed to Atty Mehnert and AAG Perkins |
| 8/4/11 | Hearing held 8/3/11.  J. Murphy, Eric Mehnert, Esq., Robert Perkins, AAG. Tape 1436, Index 6662-7213.  Tape 1437, Index 0-1352. Under Advisement |
| 11/17/11 | ORDER ON RULE 80C APPEAL, Murphy, J.  (11/15/11) The Court AFFIRMS the May 6, 2009 Decision of the Board of Examiners of Psychologists denying renewal of Dr. Bradley's psychologist's license. Copy to Atty Mehnert, AAG Perkins, and repositories. |